UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXASL
EL PASO DIVISION

| | | |
|---|---|---|
| RHINO ASSEMBLY COMPANY, LLC, <br> (d/b/a RHINO TOOL HOUSE), <br><br> Plaintiff, <br><br> v. <br><br> RHINO GROUP NORTH AMERICA, <br> RHINO INDUSTRIAL SUPPLY, INC., and <br> RAY AGUILAR, <br><br> Defendants. | § § § § § § § § § § § § | Cause No. 3:24-cv-338-KC |

## JOINT REPORT OF PARTIES' PLANNING MEETING

Pursuant to this Court's Standing Order on Pretrial Deadlines, the parties jointly report as follows:

**Parties:**

Plaintiff:       Rhino Assembly Company, LLC d/b/a Rhino Tool House
Defendant1:   Rhino Group North America
Defendant2:   Rhino Industrial Supply, Inc.
Defendant3:   Ray Aguilar

**Date Complaint Filed:**

Plaintiff filed suit against Defendants on September 18, 2024.

**Date Complaint Served:**

Defendants Rhino Group North America and Ray Aguilar were served on November 22, 2024, and Rhino Industrial Supply, Inc. was served on November 22, 2024, through the Texas Secretary of State by submitting in duplicate true copies of the Summons in a Civil Action and Plaintiff Rhino Assembly Company, LLC's Complaint for Trademark Infringement and Deceptive Practices with Exhibits A - S and the Civil Cover Sheet.

**Date of Defendants' Appearances:**

Defendants Rhino Group North America and Rhino Industrial Supply, Inc.'s answer was stricken and the Court instructed them to answer no later than January 28, 2025. Defendant Ray Aguilar answered on December 13, 2024.

Pursuant to Federal Rules of Civil Procedure 16(b), 26(f), and Local Rule 16, on January 23, 2025, counsel for Plaintiff submitted a proposed Report of Parties' Planning Meeting to Ray Aguilar at the address at which he was served and requested he confer regarding his position on the matters set forth.

## I. Certification

Undersigned counsel, after consultation with their client, and Ray Aguilar certify that they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Undersigned counsel further certify that they have forwarded a copy of this report to their client, and Ray Aguilar has received a copy of this report.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over Plaintiff's federal question claims pursuant to the Lanham Act and 28 U.S.C. § 1338 and supplemental jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367.

### B. Personal Jurisdiction

The parties agree that this Court has personal jurisdiction over them.

## III. Brief Description of Case

Plaintiff alleges Defendants knowingly and willfully infringed on its rights in its RHINO family of trademarks and trade name. Plaintiff seeks to protect its valuable and longstanding trademark rights and to protect consumers from conduct of Defendants that it alleges constitutes deceptive and unlawful trade practices.

### A. Claims of Plaintiff

Plaintiff brings claims of trademark infringement, trade name infringement, false designation of origin, and unfair competition under the Lanham Act based on Defendants' alleged misuse of Plaintiff's RHINO family of trademarks and trade name. It also brings state law claims of trademark infringement and a deceptive trade practices claim pursuant to the Texas Deceptive Trade Practices Act.

### B. Defenses of Ray Aguilar

In his answer, Ray Aguilar denies the allegations of willful infringement and further asserts the allegations do not demonstrate evidence of trademark or trade name misuse.

## IV. Statement of Undisputed Facts

Counsel for Plaintiff and Ray Aguilar certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

A. Rhino Tool House and its predecessor have used the RHINO trademark since at least 2000, and Rhino Tool House has offered its goods and services under the RHINO TOOL HOUSE word mark, design mark and trade name since at least 2018.

B. Rhino Tool House's origins date back to 1983, when its predecessor The Tool House was founded in Wisconsin by industry and tool expert Dave Wirth.

C. The Tool House began as a distributor of a wide variety of tools and other related products that help manufacturers perform their jobs.

D. In 2000, another of Rhino Tool House's predecessors, Rhino Assembly Company, LLC, was founded in North Carolina.

E. Rhino Tool House as it presently exists was came into existence in 2018, when Rhino Assembly Company, LLC, and The Tool House merged.

F. Presently, Rhino Tool House offers customers manufacturing and engineered solutions, and local, hands-on support throughout the continental U.S.

G. Rhino Tool House's products include (a) production assembly tools, (b) material handling products and tools (including cranes, conveyors, manipulators, lifting devices, automated guided vehicles, carts, lift tables, and turntables), (c) collaborative robots (known as "cobots"), automated guided vehicles, automated mobile robots, exoskeletons, wearable smart scanners, and lifting and bending devices incorporating electronics and sensors, (d) Maintenance, Repair, and Operation tools, and (e) industrial supplies.

H. Rhino Tool House's services include preventative maintenance, calibration, and ISO-accredited repair services for virtually any industrial tool available today, regardless of whether it was purchased from Rhino Tool House or a third-party manufacturer.

I. Rhino Tool House offers training and education programs through its "Rhino Tool University" program to help consumers increase productivity, product quality, and safety.

J. Rhino Tool House markets and provides these products and services to commercial and industrial clients across the U.S. under its RHINO mark, the RHINO TOOL

|      | |
|------|--|
|      | HOUSE word mark (the "RHINO TOOL HOUSE Mark"), and in connection with a design mark depicting a line-drawing of a rhinoceros with the words RHINO TOOL HOUSE. |
| K.   | Rhino Tool House owns a federal trademark registration for the RHINO TOOL HOUSE Mark, Reg. No. 6,548,412, in connection with (a) "business consulting services relating to product distribution, operations management services, logistics, reverse logistics, supply chain, and production systems and distribution solutions" in Class 35, (b) "warehousing services, namely, storage, distribution, pick-up, packing, and shipping of power-operated tools and hand tools" in Class 39, and (c) "manufacturing services for others in the field of power-operated tools and hand tools" in Class 40. |
| L.   | Rhino Tool House has applied to register the Rhino Tool House Design Mark, Serial No. 98/121,500. |
| M.   | Rhino Tool House owns common law rights in its RHINO-formative marks, including RHINO, the RHINO TOOL HOUSE Mark, and the Rhino Tool House Design Mark, which it has used and promoted over the years through advertising, publishing press releases, an online presence, attending industry events, and supporting the local community. |
| N.   | Rhino Tool House maintains an online presence through its website, located at <<www.rhinotoolhouse.com>>, social media pages, located at the @rhinotoolhouse4566 channel on YouTube, the @rhinotoolhouse account on X (formerly known as Twitter), <<www.linkedin.com/company/rhino-tool-house>>, and <<www.facebook.com/rhinotoolhouse>>. |
| O.   | Rhino Tool House issues press releases regarding its partnerships and offerings. |
| P.   | Rhino Tool House participates in industry events and trade shows, including in May 2024, Rhino Tool House attended the ASSEMBLY Show and QUALITY Show in Nashville, TN, during which its representatives gave educational presentations to manufacturing professions and it was announced as the Third Place "Best in Show" Winner for its "new technology the [sic] allows material to move itself." |
| Q.   | In March of 2011, President Barack Obama highlighted Rhino Assembly in his weekly address and in an op-ed penned for USA Today. |
| R.   | On May 24, 2023, Rhino Industrial Supply maintained a website located at <<www.rhinoindsupply.com>> that used the RHINO mark, where it offered products and services substantially similar to those of RHINO TOOL GROUP. |
| S.   | Defendants currently offer maintenance, repair, and operations solutions for production floors and industrial and commercial-grade equipment. |

    T.      Defendants' products and services are virtually identical to those offered by Rhino Tool House.

    U.      Defendants also offer a range of industrial and commercial grade equipment, supplies, and tooling, which products are identical to those offered by Rhino Tool House.

    V.      Defendants operate under the trade name RHINO and offers the goods and services described above under the RHINO word mark, and in connection with a design mark depicting a line-drawing of a rhinoceros.

    W.      Defendants' RHINO trademark is identical to Rhino Tool House's RHINO mark, and incorporates the dominant element of the RHINO TOOL HOUSE Mark.

    X.      Defendants market their products and services to industrial and commercial customers in the U.S., which consumer population directly overlaps with Rhino Tool House's actual and potential customers.

    Y.      Defendants copied some of the names of its "Clients" and "Partners" from Rhino Tool Group's website.

    Z.      On October 23, 2023, Rhino Tool House wrote to Defendats, demanding that they cease their infringing use of the Rhino Group Marks, including the RHINO trade name.

    AA.      Ray Aguilar caused Defendants to cease use of the <<rhinoindsupply.com>> domain name after Defendants received Rhino Tool House's letter and they began using <<rhinogroupnorthamerica.com>> domain name instead.

**V.  Case Management Plan**

    **A.  Standing Order on Pretrial Deadlines.**

The parties do not request modification of the deadlines in the Standing Order on Pretrial Deadlines.

    **B.  Scheduling Conference with the Court.**

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Federal Rule of Civil Procedure 16(b).

    **C.  Early Settlement Conference**

The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement may be possible.

### D. Joinder of Parties and Amendment of Pleadings

The parties do not anticipate the joinder of any additional parties or the filing of any amended pleadings.

### E. Discovery

1.   The parties anticipate that discovery will be needed on the following subjects:

a) Defendants' conception, creation, selection, and implementation of the design mark depicting a line-drawing of a rhinoceros including Defendants' first use of it and/or the RHINO trade name.

b) Identity of who created Defendants' design mark depicting a line-drawing of a rhinoceros.

c) All existing and planned goods and services that Defendants offer or plan to offer under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or the RHINO trade name.

d) Defendants' manufacture, distribution, and importation of goods under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or the RHINO mark or trade name, or the manufacture, distribution, and importation of these goods on the Defendants' behalf.

e) Defendants' sale of goods and provision of services under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or the RHINO mark or trade name, including target and actual customers, existing and planned trade channels, sales volume, and profits.

f) Defendants' advertisement, marketing, and promotion of their goods and services under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or RHINO mark or trade name.

g) Defendants' communications with customers regarding their goods and services under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or RHINO mark or trade name.

h) Customer complaints regarding Defendants' goods and services under or in connection with the design mark depicting a line-drawing of a rhinoceros and/or the RHINO mark or trade name.

i) Any evidence of actual confusion between Plaintiff's RHINO trademark and trade name and Defendants' design mark depicting a line-drawing of a rhinoceros and/or Defendants' use of the RHINO mark or trade name.

j) Any trademark searches or other searches undertaken by or on behalf of Defendants concerning the availability to use or register the design mark depicting a line-drawing of a rhinoceros.

k) Defendants' knowledge of Plaintiff and Plaintiff's goods and services under Plaintiff's RHINO trademark and the RHINO trade name.

l) Defendants' prosecution of applications to register the design mark depicting a line-drawing of a rhinoceros.

m) The individuals responsible for Defendants' conduct alleged to be infringing in this proceeding.

n) The basis for any affirmative defenses alleged in this proceeding.

2. Written discovery may commence beginning on the date the Court enters the scheduling Order for the case, and the parties anticipate depositions of expert witnesses pursuant to Federal Rule of Civil Procedure 26(b)(4), will be completed by the close of discovery.

3. Discovery will not be conducted in phases.

4. Discovery will be completed by August 29, 2025.

5. The parties anticipate that Plaintiff will require a total of 5 depositions of fact witnesses. As discovery unfolds, the need for additional depositions that are not yet anticipated may arise. These fact depositions may commence with discovery.

6. The parties will not request permission to serve more than 25 interrogatories.

7. Plaintiff intends to call expert witnesses at trial. Plaintiff will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Federal Rule of Civil Procedure 26(a)(2) by 90 days before the close of discovery. Depositions of any such experts will be completed by 30 days before the close of discovery.

8. Defendants do intend to call expert witnesses at trial. Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Federal Rule of Civil Procedure 26(a)(2) by 60 days before the close of discovery. Depositions of any such experts will be completed by 30 days before the close of discovery.

9. A damages analysis will be provided by any party who has a claim or counterclaim for damages by 30 days before the close of discovery.

**F.   Dispositive Motions**

Dispositive motions will be filed on or before 30 days after the close of discovery.

## VI. Trial Readiness

The case will be ready for jury trial by November 17, 2025.

As an officer of the Court, undersigned counsel agrees to cooperate with Ray Aguilar to promote the just, speedy, and efficient determination of this action, and Ray Aguilar agrees to same.

| | |
|---|---|
| /s/ Mark N. Osborn | February 27, 2025 |
| Mark N. Osborn/Valerie R. Auger | Date |
| Kemp Smith LLP | |

and

Claudia Ray/Maggie LaPoint
KIRKLAND & ELLIS LLP
*Counsel for Plaintiff*

| | |
|---|---|
| /s/ Ray Aguilar | February 27, 2025 |
| Ray Aguilar | Date |